**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON**

Eastern District of Kentucky
**FILED**

**SEP 2 7 2007**

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**CIVIL ACTION NO. 07-74-DLB**

**APRIL MILLS, ET AL.**                                    **PLAINTIFFS**

**vs.**                 **MEMORANDUM OPINION AND ORDER**

**GRANT COUNTY DETENTION CENTER, ET AL.**        **DEFENDANTS**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the court upon Motion to Dismiss of Defendants Matthew T. Ryan, Rhonda Laws and Unknown Public Defender (hereinafter "Public Defender Defendants") (Doc. # 4), Plaintiffs' opposition thereto (Doc. # 13), and Movants' reply to Plaintiffs' opposition (Doc. # 14).

I.   **Introduction**

On August 31, 2004, Plaintiff, April Mills, was cited for theft by unlawful taking pursuant to K.R.S. § 514.030, and misdemeanor charges were filed in the Grant County District Court (hereinafter District Court).[1]  Plaintiff was assigned legal representation through the Grant County Public Defenders Office, with the Public Defender Defendants assigned to represent her.

---

[1] Even though both April Mills and her husband Clarence Mills are named as Plaintiffs, the relevant facts relate only to April Mills.  For clarity, "Plaintiff" refers to April Mills only.  The only exception is the brief discussion of Count XI Loss of Consortium, which relates solely to Clarence Mills.

1

On November 15, 2004, Plaintiff was granted pre-trial diversion pursuant to K.R.S. § 532.045, and Plaintiff alleges she complied with the terms of the diversion agreement and was informed that she satisfactorily completed the program. On July 7, 2005, the Commonwealth of Kentucky moved the District Court to impose the original jail sentence of 60 days arguing Plaintiff violated the terms of her diversion program. A hearing date was set for July 25, 2005, and Plaintiff contends Matthew T. Ryan, one of the three Public Defender Defendants, attended the hearing, yet neither he nor the other two Public Defender Defendants informed Plaintiff of the hearing. At the hearing, the District Court revoked Plaintiff's diversion agreement in her absence, imposed a 60-day jail sentence and subsequently issued a bench warrant for her arrest.

On April 11, 2006, Plaintiff was arrested by the Boone County Sheriff's Department. She was transferred to the Grant County Detention Center (hereinafter Detention Center) where she remained in custody for seven days until all charges were dismissed on April 18, 2006. Plaintiff complains that upon arriving at the Detention Center on April 11, 2006, around 1:00 p.m., she was placed in a holding cell lacking restrooms with five unknown male prisoners, who have also been named as Defendants in this lawsuit. Plaintiff claims she was in fear and/or apprehension of imminent physical harm and injury because of the actions and conduct directed at her by the male prisoners in her holding cell. Plaintiff states she remained in the cell with the male prisoners for ten hours, before guards transferred her to another cell containing one female prisoner. Plaintiff claims to have suffered temporary and permanent mental and psychological injuries, trauma, and injury to her person because of the time she spent in the cell with the five male prisoners.

2

Plaintiffs now sue for compensatory and punitive damages, asserting eleven counts against various Defendants. The majority of the claims are made pursuant to 42 U.S.C. § 1983. Plaintiffs have also raised state claims against the Public Defender Defendants, which they argue this court has supplemental jurisdiction over under 28 U.S.C. § 1367. These claims include: legal malpractice; false imprisonment/arrest; punitive damages; and loss of consortium. The claim for loss of consortium is only made by April's husband, Clarence. He alleges he has lost the love, society, services, care, support and consortium of his wife as a direct, proximate and foreseeable result of the conduct of the Defendants involved in the treatment of his wife at the jail.

Public Defender Defendants argue this Court lacks supplemental jurisdiction over the state law claims. Even if this Court determines it has supplemental jurisdiction, Public Defender Defendants insist this Court should decline to exercise it pursuant to 28 U.S.C. § 1367(c)(1). In the alternative, they argue Plaintiffs have failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Motion to Dismiss will be **GRANTED**.

## II.   Analysis

Public Defender Defendants argue this Court lacks supplemental jurisdiction because the facts regarding the incident at the Detention Center are different from and unrelated to the facts surrounding their representation of Plaintiff April Mills. Further, they contend the § 1983 claims are brought against different Defendants, and the only commonality between the state and federal law claims is the identity of the Plaintiff.

Plaintiffs argue this Court has supplemental jurisdiction because the state claims against the Public Defender Defendants are interwoven and arise from the same case and

3

controversy as the federal § 1983 claims. Specifically, the federal and state law claims derive from a common nucleus of operative fact.

In an action in which the district court has original jurisdiction, it may also exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction is discretionary. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172-73 (1977). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)).

"The federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that the 'relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises just one constitutional 'case.'" *Id.* at 164-65 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). The facts surrounding the state claim need only be loosely connected to the federal claim to form part of the same case or controversy. *Blakely v. United States*, 276 F.3d 853, 862 (6th Cir. 2002) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

Plaintiffs rely solely on *Schuster v. Anderson*, 413 F. Supp. 2d 983 (N.D. Iowa 2005), in support of their argument that this Court has supplemental jurisdiction over the state law claims against Public Defender Defendants. In *Schuster*, investors brought an action against a bank and investment advisers alleging federal securities law claims, violations of

4

the Racketeer Influenced and Corrupt Organizations Act (RICO), and state law fraud claims. *Id.* The relevant issue was whether the investor plaintiffs sufficiently plead their federal claims because had they not, the federal claims would have been dismissed, and the court could not exercise supplemental jurisdiction over the state fraud claims pursuant to 28 U.S.C. § 1367(c)(3). As Public Defender Defendants properly point out, the *Schuster* court held the federal claims were sufficiently pled and declined to conduct a § 1367 analysis, stating briefly in footnote 11 that "all of the plaintiffs' causes of action arise out of the defendants' allegedly fraudulent conduct which thereby induced the plaintiffs into investing their money in [the bank and related entities]." *Id.* at 1015. Thus, *Schuster* fails to lend support to Plaintiffs' supplemental jurisdiction argument.

Plaintiffs' remaining argument for supplemental jurisdiction is premised on conclusory statements that the federal and state law claims arise from a common nucleus of operative fact. While the Court has failed to uncover a factually identical case, a prior unpublished decision by this Court lends guidance to Public Defender Defendants' supplemental jurisdiction argument.

In *Miller, et al. v. Kenton County Sheriff*, Covington Civil Action No. 01-CV-29-DLB, this Court declined to exercise supplemental jurisdiction, holding the state law claims did not share a common nucleus of operative fact with the federal claims. (*See*, Doc. # 137, slip opinion adjudicating Motion to File an Amended Complaint, a copy of which is attached hereto). Factually, in November of 2000, the Kenton County Sheriff's Department ran a sting operation designed to clear out old arrest warrants. A number of plaintiffs brought § 1983 claims against the Kenton County Sheriff's Department and specific officers involved in the sting, alleging they were falsely arrested and detained for eight hours.

5

In addition, one plaintiff brought state law claims alleging actions for "breach of professional duty" against her defense attorney from a prior criminal case that resulted in the issuance of the warrant that led to her arrest in the sting; and a claim for "perjury" against the state prosecutor who was involved in issuing the warrant. Plaintiff alleged her defense attorney failed to notify her about a probation revocation hearing and her failure to appear resulted in a warrant being issued for her arrest.

The plaintiff argued that "but for" the prosecutor's perjury and his defense attorney's breach of a professional duty, a warrant for her arrest would not have been issued, and she would not have been falsely arrested and detained in the sting operation. Upon review, the Court concluded that the defense attorney's failure to inform plaintiff of the revocation hearing and the subsequent sting arrest were two separate events, which appeared to have taken place over two years apart. The opinion states that the improperly issued warrant would only be relevant to the § 1983 claim if plaintiff could show that the prosecutor and defense attorney "caused the warrant to be issued so [plaintiff] would be arrested, or the Sheriff's Department knew the warrant was improperly issued." *Id.* at p. 3. Because the federal and state claims in *Miller* did not derive from a common nucleus of operative fact, the Court declined to exercise § 1367 jurisdiction over the state law claims against the public defender and prosecutor.

Like *Miller*, Plaintiffs in this case insist that, but for the Public Defender Defendants' alleged legal malpractice, Plaintiff would never have been subjected to arrest and incarceration. However, adhering to the rationale in *Miller*, such an argument would only be relevant if it could be shown that the Public Defender Defendants caused the warrant to be issued so Plaintiff would be arrested; or if Public Defender Defendants knew Plaintiff

6

would be placed in a cell with male prisoners; or if the jail knew about Public Defender Defendants' failure to inform Plaintiff of her diversion hearing.

In this case, there is no indication that Public Defender Defendants caused the warrant for Plaintiff's arrest to be issued in order to have her arrested. Nor is there any evidence that the Public Defender Defendants knew Plaintiff would be arrested ten months later and placed in a jail cell with male prisoners. Finally, there is no indication that the Detention Center knew anything about the warrant and its legality. The allegedly unconstitutional acts at the Detention Center giving rise to the § 1983 claims have nothing to do with the Public Defender Defendants' alleged failure to inform Plaintiff of her diversion hearing.

Other cases have discussed the analysis involved in deciding whether to exercise supplemental jurisdiction in such circumstances. In *Kitchen v. Chippewa Valley Schools*, supplemental jurisdiction over a state law retaliation claim was exercised where the court had original jurisdiction over the plaintiff's § 1983 and Title VII discrimination claims. 825 F.2d 1004, 1010 (6th Cir. 1987). The court stated that even though "the discriminatory treatment based on sex occurred before the retaliation, the acts complained of were part of an ongoing pattern of discrimination, and the retaliation took place because [the plaintiff] filed a complaint about the discrimination." *Id.* at 1010.

In contrast, the facts herein do not form a series of ongoing illegal conduct. After Public Defender Defendants allegedly failed to inform Plaintiff of her diversion hearing, they did nothing to maintain any type of criminal conduct towards Plaintiff. The facts indicate that Public Defender Defendants' contact with Plaintiff ended even before the diversion hearing.

7

Although not controlling, the First Circuit's decision in *Serrano-Moran v. Grau-Gaztambide* is persuasive. 195 F.3d 68 (1st Cir. 1999). In that case, the First Circuit upheld a district court's decline of supplemental jurisdiction over medical malpractice claims brought by the parents of a mentally handicapped individual who they allege was beaten by four police officers and then negligently treated by doctors at the hospital. *Id.* at 70. The court affirmed the district court's denial of supplemental jurisdiction because the facts and witnesses relevant to the § 1983 claims against the police officers were entirely separate from those relevant to the medical malpractice claim, concluding there was a temporal break between the two sets of facts. *Id.*

In this case, the facts and witnesses involved with Public Defender Defendants' representation are completely different from those involved with how Plaintiff was treated at the Detention Center. The facts surrounding the two events in this case are too disjointed to satisfy the requirements for supplemental jurisdiction under 28 U.S.C. § 1367.

In addition, even assuming Public Defender Defendants breached their duty of care to Plaintiff, the facts surrounding their breach, as they relate to evidence of damages suffered by Plaintiff at the Detention Center, do not support a finding of supplemental jurisdiction. The allegedly negligent conduct of Detention Center employees was a superseding cause, which served to break the proximate causation link between Public Defender Defendants' alleged negligence and the harm Plaintiff suffered at the Detention Center. "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Com., Transp. Cabinet, Dept. of Highways v. Babbitt*, 172 S.W.3d 786, 793 (Ky. 2005) (quoting Restatement (Second) of

8

Torts § 440 (1965)). In *Bruck v. Thompson*, 131 S.W.3d 764 (Ky. Ct. App. 2004), the

Kentucky Court of Appeals delineated the factors courts should consider in determining

whether an act is a superseding cause. These factors include:

1) an act or event that intervenes between the original act and the injury;
2) the intervening act or event must be of independent origin, unassociated with the original act;
3) the intervening act or event must, itself, be capable of bringing about the injury;
4) the intervening act or event must not have been reasonably foreseeable by the original actor;
5) the intervening act or event involves the unforeseen negligence of a third party [one other than the first party original actor or the second party plaintiff] or the intervention of a natural force;
6) the original act must, in itself, be a substantial factor in causing the injury, not a remote cause. The original act must not merely create negligent condition or occasion; the distinction between a legal cause and a mere condition being foreseeability of injury.

*Bruck*, 131 S.W.3d at 768.

Applying these factors to this case, the unlawful acts of the Detention Center

employees were a superseding cause. Therefore, evidence of Plaintiff's unlawful

incarceration would be irrelevant to potential damages assessed against Public Defender

Defendants' for their alleged legal malpractice; further supporting the conclusion that the

circumstances surrounding the Public Defender Defendants' alleged negligent conduct and

the § 1983 claims do not derive from a common nucleus of operative fact.

In view of the Court's ruling declining supplemental jurisdiction pursuant to 28 U.S.C.

§ 1367(a)(1), consideration of Public Defender Defendants' arguments under 28 U.S.C. §

1367(c)(1) and Civil Rule 12(b)(6) are unnecessary. Rather, those arguments are best left

for the state court to resolve.

9

### III.    <u>Conclusion</u>

For the reasons stated herein, **IT IS ORDERED** that the Motion to Dismiss filed by Defendants Matthew T. Ryan, Rhonda Laws and Unknown Public Defender (Doc. # 4) is hereby **granted**.   Accordingly, the Court hereby **declines** to exercise supplemental jurisdiction over the state law claims against these Defendants (Counts IV, IX, X and XI of Plaintiffs' Complaint), and said claims are hereby **dismissed, without prejudice.**  Since all claims against these particular Defendants are now dismissed, Defendants Matthew T. Ryan, Rhonda Laws and Unknown Public Defender are hereby **terminated** as party Defendants in this case.

This _27th_ day of September, 2007.



Signed By:
_David L. Bunning_
United States District Judge

G:\DATA\Opinions\2-07-74-MOOreMTD.wpd

10

Eastern District of Kentucky
F I L E D

MAY 1 3 2002

AT COVINGTON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### COVINGTON

**CIVIL ACTION NO. 01-CV-29-DLB**

**THERESA MILLER, ET AL**                                        **PLAINTIFFS**

**VS.**                    **MEMORANDUM OPINION & ORDER**

**KENTON COUNTY SHERIFF'S DEPARTMENT, ET AL**            **DEFENDANTS**

********************************

This matter is before the Court on Intervening Plaintiff Toby Jones' Motion to File an Amended Complaint (Doc. # 51), Intervening Defendant Daniel R. Braun's Motion to Dismiss (Doc. # 55) and Plaintiffs Miller and Green's Motion to Bifurcate from Plaintiff Jones' Case. (Doc. # 60)

### Relevant Procedural History

On September 21, 2001, Judge Jennifer Coffman granted Plaintiff Jones' motion to intervene as plaintiff. In her complaint, Jones brought the same causes of action against the same defendants as plaintiffs Miller and Green. Jones has now moved to amend her complaint to add state law claims of perjury against Daniel R. Braun and breach of professional duties against Hon. Steven Megerle, which the court construes as an action for legal malpractice. (Doc. #51)

On December 26, 2001, Defendant Daniel Braun filed a motion to intervene for the limited purpose of filing a response to Jones' motion to amend her complaint and add Braun as a defendant. (Doc. # 55) Judge Coffman granted the motion and construed

1

137

Braun's tendered response as motion to dismiss. (Doc. # 61) Jones has not filed a response and the time for filing such response has long passed.[1]

On January 14, 2002, Plaintiffs Miller and Green filed a motion to bifurcate from Plaintiff Jones's case. Plaintiff Jones has not filed a response and the time for filing such response has long passed. Defendants Ron Washington, Kenton County Sheriff's Department and Chuck Korzenborn have filed memoranda in opposition to the motion to bifurcate. (Doc. # 67 & 74) Plaintiffs Miller and Green have replied and requested a hearing on the motion to bifurcate. (Doc. #73) Thus, all three motions (Doc. # 51, 55, & 60) are now ripe for review.

For the reasons stated herein, Intervening Plaintiff Toby Jones' Motion to File an Amended Complaint (Doc. # 51) is **DENIED**, Intervening Defendant Daniel R. Braun's Motion to Dismiss (Doc. # 55) is **GRANTED**, and Plaintiffs Miller and Green's Motion to Bifurcate from Plaintiff Jones' Case (Doc. # 60) is **DENIED**.

### ANALYSIS

### A.    Amended Complaint

In her motion to file an amended complaint, Jones argues that joinder of Hon. Steven Megerle and Daniel R. Braun is necessary for complete relief to be provided and proper under Rule 19, Federal Rules of Civil Procedure. (Doc. # 51) Although Jones cites Rule 19, which governs joinder of parties necessary for just adjudication, it is clear from the proposed amended complaint that she is seeking to add new claims against new parties. In that regard, Jones does not allege that Braun and Megerle committed a § 1983 violation,

---

[1] Steven Mergerle has not entered an appearance in this case.

so it would not be necessary to add them as parties if she was not amending the complaint.

In her proposed Amended Complaint, Jones seeks to add Count V, which alleges that the warrant upon which she was arrested was the result of a false testimony by Daniel R. Braun in a sworn affidavit. (Doc. # 51 at ¶¶ 39-40) Jones alleges that this false testimony caused her harm in the form of "perjury." (*Id.* at ¶ 41) Jones submits that Braun's affidavit supporting his Motion for Probation Revocation Hearing was false, and therefore, the hearing which resulted in a warrant for her arrest should have never been held. Jones also seeks to add Count VI, which alleges that when Steven Megerle was representing her in a criminal action, he failed to notify her of a show cause hearing. (*Id.* at ¶¶ 43, 45) Jones alleges that Megerle violated his professional duty owed to her. (*Id.* at ¶ 46)

Intervening Defendant Braun argues that Jones' amended complaint would be futile because he is entitled to absolute immunity in his capacity as a Assistant Commonwealth's Attorney. (Doc. # 55) Braun also argues that Jones' complaint fails to state a claim for which relief can be granted because there is no federal or state civil cause of action for "perjury." (*Id.* at 3) Finally, Braun argues that even if the claim against him could liberally be construed as a claim of defamation, that claim would be barred by the statute of limitations. (*Id.*)

As a court of limited jurisdiction, a federal court must raise questions of jurisdiction *sua sponte* where appropriate. *Mickler v. Nimishillen & Tuscarawas Ry., Co.*, 13 F.3d 184, 189 (6th Cir. 1993). Because Jones' "perjury" and "legal malpractice" claims are state law

3

claims over which this Court does not have original jurisdiction, Title 28, United States Code, Section 1367 provides the framework by which the court will determine if it is going to exercise supplemental jurisdiction over those claims. Section 1367(a) provides, in relevant part:

> ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. §1367 (a).

"The federal courts original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises just one constitutional case." *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997) *(quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). However, district courts are statutorily authorized to decline supplemental jurisdiction over a state law claim if:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The exercise of supplemental jurisdiction is discretionary. *International College of Surgeons, supra*, 522 U.S. at 172-73. Section 1367 "reflects the understanding that, when

4

deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.*

In this case, Jones argues in her amended complaint that "but for" prosecutor Braun's "perjury" and attorney Megerle's "breach of a professional duty," she would not have had an outstanding warrant, and would not have been arrested during "Operation Grinch." However, Jones' claims against Braun and Megerle do not arise out of a common nucleus of operative fact. Moreover, there was no ongoing pattern of illegal conduct. The state-law claims involved separate actors in separate events which occurred over two years apart. Jones does not allege that the Sheriff's Department knew about the alleged "perjury" or "breach of professional duty" that led to her arrest during "Operation Grinch." Nor does Jones allege that Braun or Megerle knew that "Operation Grinch" was going to occur.

Here, whether Jones' warrant was improperly issued would only be relevant to her constitutional claim if she could show that Braun and Megerle caused the warrant to be issued so she would be arrested, or the Sheriff's Department knew the warrant was improperly issued. Jones has not made such allegations, and the Sheriff's Department maintains it was acting upon a warrant which was not withdrawn until December 18, 2000. (Doc. # 102, Ex. 1, Responses to Plaintiff Jones' Interrogatories at 4)

Because Jones' state law claims of "perjury" and "breach of professional duties" do not share a common nucleus of operative fact with the constitutional claims over which the court has original jurisdiction, and the scope of the state law claims predominates over the federal claims, the court declines to exercise supplemental jurisdiction over her state law

5

claims. Additionally, as discussed in Section B. of this opinion, the proposed amendment involving Daniel Braun would be futile. *See e.g. Hutsell v. Sayre,* 5 F.3d 996 (6th Cir. 1993), *cert. denied,* 510 U.S. 1119 (1994) (court need not permit amendment of complaint where such amendment would be futile); *Keweenaw Bay Indian Community v. State of Michigan,* 11 F.3d 1341, 1348 (6th Cir.1993) (if proposed amendment would not withstand a motion to dismiss, leave to amend should be denied)

For these reasons, Plaintiff Jones' Motion to File an Amended Complaint (Doc. # 51) adding new state law claims of "perjury" against defendant Braun and "legal malpractice" against defendant Megerle is **DENIED**.

Given the savings statute set forth in K.R.S. § 413.270[2], the Court's decision refusing to exercise supplemental jurisdiction over Plaintiff Jones' "legal malpractice" claim does not prejudice Jones' ability to pursue her claim in the appropriate state court. Pursuant to § 413.270, Jones will have ninety days from the date of this order to commence such action in the proper court.

### B. Intervening Defendant Braun's Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) requires this Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human*

---

[2] Section 413.270 provides, in relevant part:

(1) If an action is commenced in due time and in good faith in any court of this state ... and it is adjudged that the court has no jurisdiction of the action, the plaintiff ... may, within ninety (90) days from the time of that judgment, commence a new action in the proper court. The time between the commencement of that first and last action shall not be counted in applying any statute of limitation.

6

*Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867 (1990). Accepting Plaintiff Jones' factual allegations against Braun as true, Jones is unable to prove a set of facts that would entitle her to relief.

First and most importantly, as a prosecutor being sued for damages under § 1983, Braun is entitled to absolute immunity. *See e.g. Higgason v. Stephens,* 2002 WL 801355, – F.3d –, slip. op. at 14-16 (6th Cir., May 1, 2002). *See also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (prosecutor is entitled to absolute immunity in connection with his duties while functioning as a prosecutor).

Second, Jones' allegations of perjury against Braun are without merit since a "claim based on perjured testimony does not sufficiently state a cause of action under 42 U.S.C. § 1983." *Macko v. Bryon*, 760 F.2d 95, 97 (6th Cir. 1985).

Third, even if Jones' claim against Braun is construed as a claim of defamation, Braun's statement in his affidavit is absolutely privileged. *Schmitt v. Mann*, 163 S.W.2d 281, 283 (Ky. Ct. App. 1942) ("The prevailing rule and the one recognized in this jurisdiction is that statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice")

Fourth, any action for defamation is barred by the one-year statute of limitations set by K.R.S. § 413.140 (1)(d). In *Lashlee v. Sumner*, 570 F.2d 107, 109-10 (6th Cir. 1978), the Sixth Circuit held that Kentucky had not extended the "discovery rule," applied in medical malpractice cases, to defamation. Therefore, absent deliberate concealment of the communication by the defendant, it makes no difference that the plaintiff does not

7

discover the alleged defamation until a later time. *Id.* at 110. In this case, Braun's statement was made on August 11, 1998.[3] Jones did not file her motion for leave to file an amended complaint until December 11, 2001, well beyond the one-year statute of limitations provided for in section 413.140 (1)(d).

For these reasons, Intervening Defendant Braun's motion to dismiss (Doc. #55) is hereby **GRANTED**.

### C. Motion to Bifurcate

In their motion to bifurcate (Doc. #60), Plaintiffs Miller and Green argue that Plaintiff Jones' theory of the case is incongruent with theirs. More specifically, Miller and Green argue that the prosecution of the claims set out in Jones' proposed amended complaint shifts responsibility away from the original Defendants, which Miller and Green argue is prejudicial to their case. Relying on Federal Rule of Civil Procedure Rule 42, Miller and Green argue that the prejudice to them outweighs the consideration of use of judicial resources.

Defendants Kenton County Sheriff's Department and Chuck Korzenborn argue in response that bifurcation would require the Defendants to present much of the same evidence in two separate trials and would substantially increase the costs of defense. (Doc. # 67) The Sheriff's Department and Korzenborn argue that Plaintiffs Miller and

---

[3] This date is alleged in Jones' proposed complaint. Jones also attempted to attach and incorporate a copy of Braun's affidavit, but it only appears in the record as an attachment to Braun's response/motion to dismiss (Doc. #55). Pursuant to Rule 12(b), Fed.R.Civ.P., if "matters outside the pleadings" are presented and not excluded, a motion under 12(b)(6) is to be treated as motion for summary judgment under Rule 56. However, since the date is alleged in the complaint itself, it is not necessary to convert Braun's motion to dismiss to a motion for summary judgment.

Green failed to establish prejudice because they have made no showing that Jones' claims against the third-parties will have any effect on their claims.

Defendant Washington argues in a separate response that bifurcation would require him to present the same factual and legal defenses using the same witnesses in two different trials. (Doc. #74) In addition, Washington argues that Plaintiffs Miller and Green claim of prejudice is unfounded because the claims against the new defendants are based on facts separate and distinct from the original claims.

Plaintiffs Miller and Green argue in reply that there is "no overly duplicative evidence of dispositive facts." (Doc. # 73) Miller and Green argue that the one fact in common between the cases is the manner in which the three plaintiffs were lured into their arrests.[4] They also argue that they will be prejudiced because "[d]efense counsel are far too cunning and skilled to stay away from the perjury and legal negligence claims at trial," but "[b]ifurcation destroys their ability to talk about others being at fault in Miller and Green's trial."

In view of the court's denial of Plaintiff Jones' motion for leave to file an amended complaint, Plaintiffs Miller and Green's primary reason in favor of bifurcation has been eliminated. Having removed this argument from their arsenal, their motion to bifurcate is easily resolved.

---

[4] Despite making this argument, Plaintiffs Miller and Green do not argue that their cases should be bifurcated from each other.

9

Federal Rule 42 provides:

(b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The principal purpose of the rule is to "enable the trial judge to dispose of a case in a way that both advances judicial efficiency and is fair to the parties." *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988). Because there are no precise guidelines to determine whether a trial should be separated, courts have adopted a case-by-case approach. *Id.*

Plaintiffs Miller and Green argue that they will be prejudiced if their trial is not separated from that of Plaintiff Jones. Miller and Green maintain that "[i]t makes no difference whether Jones' motion to amend is granted." (Doc. # 73, at 2-3) The court disagrees.

The court finds that Jones' claims are substantially identical to those of Miller and Green. Each plaintiff will be presenting similar evidence against the same defendants for the same causes of action. Plaintiffs Miller and Green have failed to convince the court how or why trying the claims separately would promote judicial efficiency. To the contrary, separate trials would create the same duplication of juries and witnesses. Additionally, one trial would not be dispositive of the other. Miller and Green's argument that their valid claims will be prejudiced by Jones' insufficient claim simply does not warrant bifurcation.

In this case, separate trials would not be conducive to expedition and economy. As a result, Plaintiff Miller and Green's motion to bifurcate (Doc. #60) is hereby **DENIED**.

10

This _13th_ day of May, 2002.

DAVID L. BUNNING
**UNITED STATES DISTRICT JUDGE**

G:\DATA\Opinions\Miller_Kenton_County_2_01-CV-29.wpd

11